UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES H. BISHOP,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-CV-11-SNLJ |
| | ) | |
| **LARRY CRAWFORD,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff filed this 42 U.S.C. § 1983 action alleging, among other things, that defendants violated his Eighth Amendment rights during a medical transport at Southeast Correctional Center ("SECC"), where plaintiff was an inmate. Plaintiff complains of excessive use of force, and he also asserts that the defendants denied him proper medical treatment, failed to protect him, and showed deliberate indifference to his serious medical needs, all in violation of his Eighth Amendment rights. Plaintiff seeks actual, compensatory, future medical, and punitive damages, as well as attorney fees. Defendants filed motions for summary judgment in August 2012 and September 2012. After an extended briefing schedule, those motions are now ripe for disposition.

In addition, plaintiff filed a motion to amend his complaint (#83); defendants have responded, but plaintiff did not file a reply, and the time for doing so has passed. Plaintiff has filed a motion for the Court to Review In-Camera the Defendants' Exhibits (#94). The medical defendants have filed a motion for "judgment" in response (#93). The above-described motions will be addressed in turn below.

I.  **Motions for Summary Judgment**

Each group's motion for summary judgment is addressed separately below.

A.  **Legal Standard**

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Pursuant to Federal Rule Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**B.     Motion for Summary Judgment by MDOC Defendants (#56)**

Plaintiff claims that Missouri Department of Corrections ("MDOC") Sergeant Alex Clinton used excessive force against him (Count I), that MDOC Officers Joshua Lacy and Aaron Gilliland failed to protect him (Count IV)[1], and that Sergeant Clinton assaulted him (Count V). Defendants Clinton, Gilliland, and Lacy (collectively, the "MDOC defendants") seek summary judgment on all counts.

**1.     Factual Background**

At all times relevant to plaintiff's complaint, he was incarcerated at the Southeast Correctional Center ("SECC") in Charleston, Missouri. He is a member of the "separatist religious faith," and, as a result, he believes he cannot share a cell with black inmates. On October 11, 2005, Clinton, Gilliland, and Lacy escorted plaintiff to a medical appointment. Plaintiff had the appointment to follow-up regarding injuries he had received during an knife attack by another inmate two months earlier. As the MDOC defendants escorted plaintiff along the "top walk," they say plaintiff began using vulgar language and refused to go down the stairs to his medical appointment.[2] Defendant Clinton then escorted plaintiff back to his cell, but plaintiff pulled away from Clinton's grasp. Defendant Clinton used some force to maintain

---

[1] Plaintiff dismissed Counts II and III, which were "deliberate indifference" claims against defendants Gilliland and Lacy, on March 13, 2013 (#89), rendering the MDOC defendants' motion for summary judgment on those counts moot.

[2] Defendant Clinton's facts as stated in the summary judgment materials are not consistent with defendant Clinton's "Incident Report," filed as Exhibit 13 to plaintiff's memorandum. Although Clinton's summary judgment memorandum states plaintiff refused to go down the stairs, the Incident Report does not mention that plaintiff refused to go down the stairs. Instead, Clinton stated in the Incident Report that plaintiff had been objecting to Clinton's touching him and refusing to comply with instructions, so Clinton informed plaintiff "that his doctor's appointment was terminated, due to his behavior and to stop walking and return to his Cell." Then Clinton wrote that plaintiff became verbally aggressive and threatening.

control over plaintiff and placed plaintiff up against the wall. Then, when plaintiff refused to enter his cell, defendant Clinton again used some force to place plaintiff in the middle of the cell doorway and eventually escorted him into the cell.

Plaintiff's version is different. He states that he was being escorted by Gilliland and Lacy when Clinton approached and demanded that plaintiff stop. Plaintiff states that he stopped as Clinton requested, then Clinton violently removed plaintiff from the other officers' custody and control. Plaintiff disputes that he used vulgar language or made racial slurs. He further claims that defendant Clinton began harassing him about his separatist beliefs and threatened to push him down the stairs. Plaintiff says he feared for his life, which is why he pulled away from Clinton's grasp. Plaintiff alleges that defendant Clinton beat him about his head, chest, and torso at the top of the stairs and then roughly moved plaintiff back toward his cell. Plaintiff states that he did not refuse to enter his cell; rather, he states defendant Clinton slammed plaintiff into his cell door six to eight times and slammed the door into plaintiff's body several times. Plaintiff says he was badly injured, bleeding, with a broken nose, and that his pre-existing injuries were aggravated by the beating as well. Plaintiff disputes that the amount of force used by defendant Clinton was necessary, and he alleges that defendants Gilliland and Lacy should have stopped Clinton's actions.

Plaintiff did not respond directly to the defendants' statements of fact, although he did submit his own "statement of controverted facts" and an affidavit, and he submitted verified memoranda with the Court. Plaintiff's numerous exhibits include affidavits of four other inmates who witness the alleged assault and who corroborate plaintiff's version of the events. In addition, a "Witness Request" form shows that plaintiff requested that MDOC interview plaintiff's cellmate, Thomas Freeman, and defendants Lacy and Gilliland. The form shows that

4

Freeman reported "the officer grabbed him and threw him against the door, he didn't seem to be offering any resistence, another officer came over he was already being escorted by one." Plaintiff also attaches copies of both his formal grievances and his informal correspondence with MDOC and other officials. Although his medical records do not indicate that plaintiff suffered injuries from the October 11 events, plaintiff suggests that the nursing staff made false statements on his medical records to cover up the episode. The records show that defendant nurse Marsha Aters visited plaintiff at 8:30 a.m. on October 11 after a "use of force" and that plaintiff complained of "back pain and shoulder pain," but "no injurys [sic] noted no redness, swelling or bruising noted." Subsequent records indicate plaintiff was seen by a member of the medical staff at least one time per day every day through the end of the month except October 25, and the only injuries discussed in the medical records relate to plaintiff's altercation from August.

### 2. Count I: Excessive Force Claim Against Clinton

Plaintiff characterizes his claim against defendant Clinton as "deliberate indifference," but a close reading indicates that his allegations actually amount to an excessive use of force claim.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations omitted). "Officers may reasonably use force in a

good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Id.* at 6 (internal quotation omitted).

Defendant Clinton contends that plaintiff cannot show that Clinton applied force malicious and sadistically for the purpose of causing harm. Rather, Clinton says it is undisputed that plaintiff pulled away from Clinton's grasp at the top of the stairs and that plaintiff refused to enter his cell. Clinton's description of the force he used to "maintain complete control" over plaintiff and "escort[] him" into his cell is vague. Although it is true that plaintiff does not specifically respond to the MDOC defendants' statements of fact, even if plaintiff admits all of those facts, they do not require summary judgment for defendant Clinton because those facts do not actually address plaintiff's excessive force allegations. Plaintiff testified at his deposition that Clinton beat him, slammed him against the cell door, rammed his head into the metal door several times, then slammed the door onto plaintiff's torso several times. Plaintiff said his nose and shoulder were injured, among other things. Plaintiff has set forth affidavits of witnesses who state they observed defendant Clinton's malicious assault of plaintiff. In addition, MDOC's own document — a "Witness Request" — recounts the statement of plaintiff's cellmate, who supports plaintiff's version of the facts. As for plaintiff's injuries, plaintiff does not dispute that his medical records indicate he suffered no injuries. However, plaintiff contends that the medical records are inaccurate. And even if the medical records are accurate that plaintiff did not sustain injuries, the Supreme Court has admonished the district courts to heed "*Hudson*'s direction to decide excessive force claims based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy,* 130 S.Ct. 1175, 1177 (2010) (per curiam). Although it is true that "the extent of the injury may also provide some indication of force applied," *id.* at 1178, the Court is mindful that it must resolve all conflicts of evidence in favor of the nonmoving party.

6

*See Robert Johnson Grain Co.*, 541 F.2d at 210. Ultimately, plaintiff has offered evidence that supports his claim that defendant Clinton acted maliciously and/or sadistically. There is thus a genuine dispute of material fact with respect to whether defendant Clinton used excessive force against plaintiff on October 11, 2005. Summary judgment will be denied as to Count I.

### 3. Count IV: Failure to Protect Claim Against Gilliland and Lacy

Plaintiff alleges that defendants Gilliland and Lacy stood by and failed to stop defendant Clinton's alleged assault of plaintiff. A violation of the Eighth Amendment based on a failure to protect involves two inquiries. First, the plaintiff must show that the conditions that result from the failure to protect "pose a substantial risk of serious harm." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996). "Second, the subject prison official must have exhibited a sufficiently culpable state of mind, that is, the prison official must have been deliberately indifferent to a substantial risk of serious harm to the inmates." *Lenz*, 490 F.3d at 995.

As to both prongs, the defendants essentially rely on Clinton's argument that no excessive use of force took place to show that there was neither a substantial risk of harm nor deliberate indifference to such a risk. They state in their memorandum that there is no evidence "that Bishop was subjected to an excessive use of force from which he needed protection." (#98 at 11.) But plaintiff's evidence that defendants Gilliland and Lacy stood by while defendant Clinton slammed plaintiff's head into the door and beat plaintiff's torso with the door satisfy both prongs. Clinton's alleged actions posed a substantial risk of harm to plaintiff, and, because they are alleged to have occurred multiple times in close proximity to both Gilliland and Lacy,

there is at least a question of fact as to whether the officers were deliberately indifferent to plaintiff's safety. Viewed in the light most favorable to the nonmovant (plaintiff), the Court cannot grant summary judgment on this set of disputed facts. Defendants' qualified immunity arguments fail for the same reason.

### 4. Count V: Assault Claim against Clinton

Defendant Clinton argues that plaintiff's assault claim against him fails because Section 217.405(3) R.S.Mo. states that correctional officers "have the right to use such physical force as is necessary to defend himself, suppress an individual or group revolt or insurrection, enforce discipline or to secure the offender." In essence, Clinton argues that his use of force against plaintiff was reasonable and not excessive. The Court has already held that there is a question of fact with respect to plaintiff's excessive force claim.

Next Clinton suggests that the doctrine of official immunity protects him. Under that doctrine, a public official acting within the scope of his authority is not liable for injuries arising from discretionary acts or omissions, but a public official may be held liable for torts committed when acting in a ministerial capacity. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Id.* (citing *Kanagawa v. State*, 685 S.W.2d 831, 836 (Mo. banc 1985), *overruled on other grounds by Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988)). Here, plaintiff has set

forth evidence that defendant Clinton acted with malice, and thus official immunity does not apply.

Next, defendant Clinton argues that the public duty doctrine insulates his actions from liability. "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. Although Clinton insists without explanation that the record does not support that Clinton owed a specific duty to plaintiff, "just as the doctrine of official immunity will not apply to conduct that is willfully wrong or done with malice or corruption, the public duty doctrine will not apply where defendant public employees act in bad faith or with malice." *Southers*, 263 S.W.3d at 612 (internal quotation omitted) (quoting *Jackson v. City of Wentzville*, 844 S.W.2d 585, 588 (Mo. Ct. App. 1993)). Thus, Clinton's reliance on the public duty doctrine is unavailing. Summary judgment will be denied as to Count V.

**B.     Motions for Judgment by Medical Defendants (#49, #93)**

Plaintiff claims in Counts VI through VIII that defendants Marsha Aters, Stephanie Novak, Deborah Vinson, and their employer, Corizon, Inc. (formerly known as Correctional Medical Services, Inc., or "CMS") (collectively, the "medical defendants"), were deliberately indifferent to plaintiff's serious medical needs.

The medical defendants filed a Motion for Summary Judgment (#51) on August 31, 2012. Plaintiff sought and received lengthy extensions of time in which to file his opposition. On March 13, 2013, plaintiff filed his "Motion for Court to Review In-Camera Ad-Hoc, All Defendants' Exhibits Filed Under Seal in Support of All Defendants' Motions for Summary Judgment" (hereinafter "Motion for In Camera Review") (docketed as both #90, #94). Plaintiff stated that the defendants had filed certain exhibits under seal and that he believed there may be

discoverable information contained within the sealed exhibits which defendants were obligated to produce to plaintiff. He further stated that he could not meaningfully respond to the defendants' motions for summary judgment without knowing the contents of the sealed exhibits. Thus, he asked for the Court to review the sealed documents to determine whether they should be turned over to plaintiff.

On March 20, 2013, the medical defendants responded with a Motion for Judgment (#93). They stated that they filed certain exhibits in support of their summary judgment motion under seal solely to protect plaintiff's private health information. Further, the medical defendants stated that they had sent to plaintiff a copy of all the exhibits filed in support of their summary judgment motion. Thus, plaintiff is in possession of all the documents filed with the Court. Plaintiff's contention that he has been unable to respond to the summary judgment motion is therefore without merit. Although several months have passed since the medical defendants filed their Motion for Judgment, plaintiff has not responded to it, nor has he acknowledged or disputed the fact that he is in possession of the documents that were filed under seal.

### 1. Factual background

Defendant Marsha Aters, a licensed practical nurse, conducted the use-of-force examination on plaintiff after plaintiff was returned to his cell. Plaintiff contends in an affidavit[3] that Aters did not adequately examine him or attend to his injuries. He states that she looked at him through the small window on the cell door and left. Defendant Aters explains by affidavit that plaintiff appeared to be hostile and angry, and thus she determined that entering his cell would be potentially unsafe for both herself and the attendant correctional officers. Plaintiff does

---

[3]The affidavit was submitted by plaintiff as an exhibit to his opposition to the MDOC defendants' motion for summary judgment.

not dispute that he was angry. Aters states that she did not see any signs of trauma or any apparent injuries. In the 23 days between October 11 and November 3, 2005 (the date on which plaintiff left SECC to attend a trial), plaintiff was seen and examined by nurses 28 times and by physicians 4 times. Defendant Aters further states that there is no support for plaintiff's suggestion that the defendants colluded to cover up the events of October 11.

Defendant Stephanie Kasting is a registered nurse who was Health Services Administrator at SECC. Defendant Deborah Vinson is a registered nurse who was Director of Nursing at SECC. Neither Kasting nor Vinson personally provided nursing or medical care to plaintiff on or after October 11, 2005. Defendant Vinson's responsibilities did not include providing such care to inmates, but she did respond to offender Informal Resolution Requests. Defendant Kasting's responsibilities did not include providing such care to inmates, but she did respond to offender Grievances. Neither Vinson nor Kasting were ever asked, nor did they ever refuse, to schedule plaintiff for a physician appointment.

### 2. Count VI: Deliberate Indifference Claim against Aters

Plaintiff claims that Aters failed to treat his injuries allegedly caused by defendant Clinton and that her conduct amounted to a violation of his Eighth Amendment right to be free from cruel and unusual punishment. "The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide inmates with medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 103, (1976)). "To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to [the prisoner's] serious medical needs.'" *Dulany*, 132 F.3d at 1237-38 (citing *Estelle*, 429 U.S. at 104). As with the failure to protect claim, the Court's inquiry involves both an objective and subjective

11

component: plaintiff must demonstrate that he suffered from an objectively serious medical need and that the prison official knew of but deliberately disregarded those needs. *Id.* at 1239. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

Here, plaintiff complains that defendant Aters examined him only through the window of his cell door. Defendant Aters states that plaintiff was not suffering from an objectively serious medical condition and that she was not deliberately indifferent to it. Aters explained that she did not enter the cell because, as plaintiff freely admits, he was visibly angry when Aters arrived at his cell to conduct her "use of force examination." Plaintiff was thereafter examined by medical personnel 32 times over 23 days. Notably, plaintiff has not responded substantively in any way to defendants' motion. Rather, plaintiff contends in his Motion for In Camera Review (#90, #94) that he does not have access to the medical defendants' exhibits that were filed under seal, so he says he cannot respond. The medical defendants responded that they *had* provided him with a full set of the exhibits (which were filed under seal only for the purpose of protecting plaintiff's private medical records). Months have passed, and plaintiff has still not responded to the medical defendants' motion, nor has he explained why he is unable to do so. Defendant Aters has set forth her evidence showing that plaintiff cannot prove his deliberate indifference claim against her. Plaintiff as the nonmovant bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249. Plaintiff has not carried his burden. Moreover, the undisputed evidence shows that plaintiff was seen and treated numerous times — and that during the relevant time period he

was seen by an outside specialist for his injury related to the August 2005 altercation. Furthermore, even if the Court looks to the affidavits and Witness Report that corroborate his allegations that defendant Clinton attacked him (and which plaintiff submitted in opposition to the MDOC defendants' summary judgment motion), plaintiff has set forth no evidence — aside from his own, unsupported self-serving statements — to support his claimed injuries. As a result, plaintiff has not set forth evidence from which a jury could find that he suffered from an objectively serious medical condition.

### 3. Count VII: Deliberate Indifference Against Kasting and Vinson

Plaintiff's alleges that defendants Kasting and Vinson "failed to take any remedial action sufficient to deliver[] medical care for plaintiff's serious medical needs" and "refused to intervene and protect plaintiff." (Am. Cmplt. ¶ 101.) However, it is undisputed that neither Kasting nor Vinson's job responsibilities included providing medical care to inmates. It is also undisputed that neither defendant ever refused to schedule plaintiff with an appointment or otherwise prevented plaintiff from obtaining care (indeed, he was seen numerous times by medical personnel in the weeks after the alleged assault, including by an outside specialist). Finally, as indicated above, plaintiff has not shown that he suffered from an objectively serious medical condition. As a result, plaintiff cannot support his claim that they were deliberately indifferent to his serious medical needs, thus defendants Kasting and Vinson are entitled to summary judgment.

### 4. Count VIII: Deliberate Indifference against Corizon

Defendant Corizon provides medical care for inmates at the prison and employs defendants Aters, Kasting, and Vinson. Plaintiff alleges in his complaint that it was Corizon's policy, procedure, and/or custom that resulted in the medical defendants' deliberate indifference

to plaintiff's serious medical needs. (Am. Cmplt. ¶ 110.) However, again, plaintiff did not respond substantively to the medical defendants' motion. Plaintiff has made no attempt to show Aters, Kasting, and Vinson were following a policy, procedure, or custom of Corizon. Nor has plaintiff made any attempt to show that he suffered from an objectively serious medical need. As a result, summary judgment will be granted to Corizon.

## II.     Plaintiff's Motion to Amend (#83)

Plaintiff filed a motion to amend his complaint on January 2, 2013. The motion seems aimed at correcting his deliberate indifference claims against the MDOC defendants for the sake of clarity. He apparently seeks to recast his deliberate indifference claim as an excessive force claim against defendant Clinton. Because it will not be necessary for plaintiff to file a new complaint at this time for the purpose of making that correction, the Court will deny the motion.

## III.    Plaintiff's Motion to Review In Camera (#90, #94)

As discussed above, plaintiff's motion for in camera review of the documents filed under seal is without merit, as plaintiff has received copies of those documents. The motion will be denied as moot.

## IV.     Medical Defendants' Motion for Judgment (#93)

Because summary judgment will be granted to the medical defendants, this motion will be denied as moot.

## V.      Conclusion

Because plaintiff is entitled to a trial regarding his surviving claims, the Court will appoint counsel to represent the plaintiff in a separate order. Counsel for the plaintiff may seek to reopen discovery for a limited period of time in order to prepare for trial. The plaintiff should await further order of the Court on those matters.

Accordingly,

**IT IS HEREBY ORDERED** that the medical defendants' Motion for Summary Judgment (#49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the MDOC defendants' Motion for Summary Judgment (#56) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion to Amend (#83) is **DENIED.**

**IT IS FURTHER ORDERED** that the medical defendants' Motion for Judgment (#93) is **DENIED as moot.**

**IT IS FINALLY ORDERED** that plaintiff's Motion for Review In Camera (#90, #94) is **DENIED**.

Dated this  23rd  day of August, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

.